quence of the payment of the advance, that the plaintiffs should have the usual commissions for the sale of the property consigned.

With the view to this action, the transaction must be considered as real, and the legal consequences resulting from it. It having been fraudulent and fictitious, is the ground of complaint, and shows the damage by showing what would have been the benefit, had the transaction been bona fide.

The defendant's counsel would limit the payment of the draft, under the second ground, to the danger of losing the money advanced. If the money had not been advanced, the plaintiffs could not have been in danger of losing it; but the inducement to make the advance, is the question here. Not that the plaintiffs are in danger of losing it, because they made it. The only inducement to the advance was, to secure the consignment of the property, as above stated.

The counsel seems to think that the law, in a case like the present, can give no compensation. That that is done for services rendered; and not because, by the conduct of the defendant, the plaintiffs "have lost the opportunity to make commissions." Why not give compensation in such a case? Is it not a contract? Have not the plaintiffs advanced twelve thousand dollars to secure the sale of the pork; and if the sale be not given to them, may they not claim compensation for a breach of the contract? This does in no respect differ from ordinary contracts made daily, for a breach of which the law gives damages. But it is said, if there was a contract, why not bring the action upon it. There was the form of the contract, but the fraud of the defendant withheld from it the substance of a contract. He has made himself responsible on the ground of fraud, and for that he should be prosecuted. The false warehouse receipt which he gave, saying in it that the property was to be irrevocably held subject to the plaintiffs' order, created a responsibility on the part of the defendant, if the statement had been true, to keep the property safely, and forward it as soon as practicable to the plaintiffs, which he promised to do. The whole being false, he is not the less liable to the plaintiffs for the deceit. And it is not for him, or those who represent him, to say, sue on the contract and not on the fraud. He is liable as the plaintiffs seek to make him liable, and that is a sufficient answer to the demurrer.

As to the second ground, that the plaintiffs are in danger of losing the money paid on the draft, it is said, the allegation does not allege a loss, and consequently they having suffered no damage, can recover none. And it is objected that there is no averment in the declaration, of the inability of Adams to refund the money paid on the draft. Can this be relied on by the defendant, as a sufficient answer to his liability? That Adams, having received the money, is liable, is admitted, but

is not the defendant also liable? If he be liable, the plaintiffs are not bound to sue Adams before they can resort to their suit against him.

The advance was made on the faith of the defendant's receipt, as a warehouse man. The plaintiffs looked to the pork, as a security for the money, and by the advance made, it was their own until they were completely reimbursed. Though Adams may be, or may have been, a man of property, the twelve thousand dollars were not paid on his credit. The transaction was commercial in its character, and the defendant as warehouse man, occupied a position of peculiar trust and confidence; and he is bound to answer in that capacity. He was the chief instrument in the fraud, which could not have been successfully carried out, had it not been for his co-operation. He is, therefore, in morals as well as in law, responsible to the plaintiffs for the injuries experienced by them, through his fraud. The demurrer to the first three counts is overruled.

SUYDAM (WILLIAMSON v.). See Case No. 17,756.

## Case No. 13,658a.

### The SVEND.

[See 1 Fed 54.]

## Case No. 13,659.

### In re SVENSON.

[9 Biss. 69;[1] 19 N. B. R. 229; 11 Chi. Leg. News, 367; 8 Reporter, 261; 25 Int. Rev. Rec. 274.]

Circuit Court, N. D. Illinois. July, 1879.

BANKRUPTCY — APPLICATION FOR DISCHARGE—ASSENT OF CREDITORS—PECUNIARY CONSIDERATION.

1. The district court has authority to allow a bankrupt to withdraw his petition for discharge and to file a new one at a later day.

2. The statute making it a ground of objection to a discharge, that the bankrupt has procured the assent of creditors by a pecuniary consideration, does not apply to the payment by the bankrupt of the attorney's, notary's and register's fees, in making proofs of claims against his estate.

[In review of the action of the district court of the United States for the Northern district of Illinois.]

In bankruptcy. The bankrupt [Sven Svenson] filed his petition for discharge in the district court, on the 27th day of March, 1878, returnable on the 4th day of May, 1878, and on the last mentioned day, petitioners, creditors of bankrupt, appeared and objected to the issuing of the discharge on the grounds that the estate, the bankruptcy being voluntary, had not paid 30 per cent., nor had the bankrupt obtained the assent

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]